# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

United States of America      :      19-14035-CR-ROSENBERG

v.

Gary Hendry                   :      April 21, 2020

## Motion and Incorporated Memorandum for Modification of Sentence and for Other Relief

The country faces unprecedented challenges from the novel—and virulent—Coronavirus ("COVID-19") pandemic. In roughly 100 days, this virus progressed from 15 confirmed cases in the U.S. (and no deaths) to more than 785,245 cases and 42,448 deaths, with the exponential spread of this disease projected to continue. There is absolutely no known treatment for this disease and there is no vaccine to prevent it.

The magnitude and speed of COVID-19's transmission have led all 50 states and the national government to declare states of emergency with more than half the states and the District of Columbia additionally imposing severe "lockdown" and "masking" rules for their citizens.

There is no end in sight to this crisis. Without question, individuals detained in jails and prisons face particularly grave

danger from COVID-19, as the conditions of their confinement create the ideal environment for the transmission of this disease.

"Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced."[1]

Some facilities have already experienced mass outbreaks and multiple deaths and COVID-19 has materially affected the operations of all BOP facilities.[2]

Gary Hendry, as a particularly vulnerable individual, is much more likely to avoid the perils of the coronavirus, and be less of a threat to others, if he is permitted to practice social distancing, maintain proper hygiene and have access to medical care available by home confinement, His very chance of survival would be enhanced.[3]

In an effort to contain the spread of this deadly disease, and safeguard inmates with elevated vulnerabilities, District Judges have begun reducing the federal prison population. By modifying prison sentences to home confinement and granting compassionate release, in a wide array of cases that would not otherwise have

---

[1] Centers for Disease Control and Prevention (CDC). *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Mar. 23, 2020).

[2] Indeed, the Bureau has placed all facilities on a 14-day lockdown.

[3] *See* Jan Ransom et al., *"A Storm is Coming": Fears of an Inmate Epidemic as the Virus Spreads in the Jails*, N.Y. Times (Mar. 20, 2020). See these decisions as attached and marked as composite Exhibit 1.

2

qualified pre-pandemic.[4] These have included at least three instances in this District, including a lengthy one by Middlebrooks, over the Government's objection.[5]

The dangers of the moment call for immediate action.[6] Further, as Attorney General Barr exhorted in his April 3, 2020 memo to the BOP directing expedited transfers of eligible inmates to home confinement, "time is of the essence."

## Relief Requested

Gary Hendry moves this Court to modify his sentence of 1 year and 1 day to home confinement for the time remaining on his sentence.

Such a sentence will allow Mr. Hendry to protect himself <u>and others</u> from the spread of this virulent virus by sheltering in place at his residence, in conformity with the only disease control mechanism currently available—physical distancing.

While this motion is under the Court's consideration, and in the hope that it can be rendered moot, the Court is urged to recommend to the BOP that Mr. Hendry be forthwith transferred

---

[4] *See United States v. Gonzalez*, No. 2:18-cr-232 (E.D. Wash. Mar. 31, 2020) (releasing defendant one month into a 10-month sentence in light of medical issues; ordinarily these conditions would be manageable but "these are not ordinary times").

[5] Attached hereto an incorporated as Defense Exhibit 1 – Note in *United States v. Matthews*, No. 02:92-cr-06020, The Motion was unopposed by the Government.

[6] *See* Ltr. from Sen. Richard J. Durbin et al. to Att'y Gen. William P. Barr at 1 (Mar. 23, 2020), *available at* https://www.durbin.senate.gov/imo/media/doc/Letter ("Conditions of confinement do not afford individuals the opportunity to take proactive steps to protect themselves, and prisons often create the ideal environment for the transmission of contagious disease.).

to home confinement to serve the remainder of his sentence, in accordance with Attorney General Barr's directive to prioritize the use of existing statutory authorities to transfer to home confinement those at-risk inmates who are non-violent and pose minimal likelihood of recidivism).[7] Gary Hendry, without question, fits this category of incarcerated individuals.

Attorney General Barr premised this (directive on his finding that emergency conditions materially affecting the functioning of the BOP exist because of the coronavirus.

The subsequent CARES Act [the Coronavirus Aid, Relief, and Economic Security Act. Pub. L. No. 116-136 (Mar. 27, 2020)] further empowers the BOP Director to review all inmates for home confinement—not only those who were previously eligible for transfer.

Prompt action by the BOP would render this motion resolved, since the sole relief sought, is a transfer to home confinement for the balance of the defendant's incarceratory sentence.

AUSA Michael Porter has been consulted with respect to the relief sought. The Government at this time objects, based on jurisdictional considerations. (Conversation April 21, 2020.

### Background

On December 18, 2019, this Court sentenced Mr. Hendry to serve a sentence of 1 year and 1 day followed by 3 years of supervised release.

---

[7] Memorandum from AG to BOP ( April 3, 2020).

The Court's familiarity with the nature and circumstances of the non-violent offenses, and of Mr. Hendry's many positive characteristics, is well established.

Mr. Hendry self-reported and began serving his sentence on April 20, 2020, at the FCI Jessup Satellite Camp. His inmate registration number is 20296-104.

The attached letter from Dr. Gary S. Kabinoff and prescription note from Dr. Daniel King, in addition to the medical information reflected in the PSR, notes that Mr. Hendry has significant pre-existing medical conditions: hypertension; mitral valve disorder; hyperlipidemia; melanoma, as well as sleep apnea, (which require his employment of a CPAC apparatus). The recent history of the potential fatal disease of melanoma requiring regular checkups is also a major concern.[8]

It is undisputable that there is an elevated risk of death from this virus in individuals who are solely hypertensive. (*See Sawicz* unpublished decision attached).

The added breathing disorder that Mr. Hendry suffers from—sleep apnea—further heightens the risk of fatal complications from COVID-19 should Mr. Hendry contract this disease as does his heart issue

## Legal Analysis

Federal courts have the statutory authority to modify an imposed term of imprisonment under 18 U.S.C §3582(c)(1), as

---

[8] Attached hereto and incorporated herein as Defense Exhibit 2 – are his Report, as well as the pertinent portion of the PSR and the prescription note from Dr. Daniel King.

5

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

amended by the First Step Act of 2018, upon a showing that extraordinary and compelling reasons justify reducing/modifying a previously imposed sentence.

Section 3582(c)(1)(A)(i) now permits courts to consider motions filed by the defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the[i] receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"

The following shows that "extraordinary and compelling reasons" warrant modification of Mr. Hendry's sentence to home confinement and that the statute's exhaustion requirement does not bar the Court from granting the relief sought despite the fact that 30 days have not passed since defendant sought relief from the BOP.

**I. Extraordinary and Compelling Circumstances**

Courts across the nation have been confronted with the meaning of compassionate release in the context of a deadly pandemic and the ever-increasing risk of COVID-19 to an inmate's well-being.

As noted, just days ago, Judge Middlebrooks reduced a defendant's 41-month sentence for mail fraud to time served because the defendant's incarceration, in light of his medical conditions, which exposed him to a heightened risk of serious complications should he contract the coronavirus. *United States v.*

6

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

*Minor*, 9:18-cr-80152-DMM (April 17, 2020) (release date 1/22/22). Previously attached as Exhibit 1.

Two factors stand out from Judge Middlebrooks' ruling. First, Gary Hendry has many of the same afflictions as William Minor (they both have cardiovascular problems, hypertension, hyperlipidemia and sleep apnea).

Second, the Court reduced Mr. Minor's sentence to time served, sparing him from approximately 20 months of confinement.

In contrast, Mr. Hendry is not seeking a release from his sentence. Rather, he is seeking a modification to home confinement for the balance of his sentence, which is approximately 10 months.

As Judge Middlebrooks explains,

> COVID-19 is a highly contagious virus that can be spread even by asymptomatic carriers. The virus is "spread mainly from person-to-person . . . [b]etween people who are in close contact with one another . . . [t]hrough respiratory droplets produced when an infected person coughs or sneezes." "Courts around the country have recognized that the risk of COVID-19 to people held in jails and prisons 'is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected.'" *See United States v. Williams*, 2020 WL 1751545, at *2 (N.D. Fla. Apr. 1, 2020) (quoting *Basank v. Decker*, --- F. Supp. 3d ---, 2020 WL 1481503, at *3 (S.D.N.Y. March 26, 2020), and citing *United States v. Harris*, --- F. Supp. 3d ---, 2020 WL 1503444, at ¶ 7 (D.D.C. Mar. 27, 2020)); *United States v. Campagna*, 2020 WL 1489829, at *2 (S.D.N.Y. Mar. 27, 2020); *Castillo v. Barr*, 2020 WL 1502864, at *2 (C.D. Cal. Mar. 27, 2020); *United States v. Kennedy*, 2020 WL 1493481, at *2-3 (E.D. Mich. Mar. 27, 2020); *United States v. Garlock*, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020)).

Order at pp 3-4.

The cases cited by Judge Middlebrooks represent growing precedential trends.[9] Courts agree with the common-sense proposition that the increased risk of death posed by COVID-19 in the cramped context of a correctional facility is an extraordinary and compelling reason to either release a defendant or modify an incarcerative sentence to home confinement.

COVID-19 is deadly to a percentage of those who get it wherever they get it, but the ability to guard against it is greater at home, where a defendant can properly quarantine and use anti-viral products.

That cannot occur in the environment of a federal correctional facility. Purell and other hand sanitizers are contraband in correctional institutions because of their alcohol content.

The CDC's website acknowledges: "People in correctional and detention facilities are at greater risk for illnesses, such as COVID-19, because of their close living arrangements with other people." Or, as one district judge so aptly put it, prisons are "tinderboxes

---

[9] *See also United States v. Gonzalez,* 18-CR-232 (E.D.WA March 31, 2020)("because it is impossible to practice social distancing or isolation in a jail setting, the pandemic will be devastating when it reaches jail populations."); *United States v. Colvin,* No. 3:19-cr-179-JBA (D. Conn. April 2, 2020)(in light of "the expectation that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes that the risks faced by Defendant will only be minimized by her immediate release to home."). And particularly relevant to Mr. Hendry's case, District Judge Allyne R. Ross granted compassionate release because defendant's hypertension heightens his vulnerability to the complications of COVID-19. *United States v. Sawicz,* 08-cr-287 (ARR)(E.D.N.Y. Apr. 10, 2020)(unpublished/copy attached).

8

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

for infectious disease." *United States v. Rodriguez*, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020).

There is no cure for COVID-19. This virus spreads easily and rapidly, and in over 42,000 cases to date was fatal. One-in-six infected persons become seriously ill requiring hospitalization. The disease is particularly dangerous to individuals with two or more disease processes present at the same time, "comorbidity." Gary Hendry is one of these individuals.

The combination of Mr. Hendry's previously referenced multiple medical conditions make him particularly susceptible to potentially fatal complications, if exposed to COVID-19. The risks without doubt are exacerbated in an incarcerative environment.

It is respectfully submitted that these are exceptional and compelling circumstances, which warrant modifying Mr. Hendry's sentence to home confinement.

## II. The 30-Day Exhaustion Period is Not a Jurisdictional Bar

Ordinarily an inmate cannot seek compassionate release or sentence modification from the sentencing court until he or she satisfies 3582(c)(1)'s claim processing requirement.

This requirement is satisfied by either "exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden." *Id.*

§3582(c)(1)(A). Thus, a defendant can bring his claim to the district court 30 days after it is submitted and <u>before</u> the BOP has rendered a final decision.

Though this provision is often generically described as an exhaustion requirement, in fact, it is a non-jurisdictional claim processing rule.

Again, Judge Middlebrooks decision in *Minor* is instructive:

> Although § 3582(c)(1)(A) plainly imposes an administrative exhaustion requirement, the United States Supreme Court has held that, even in such circumstances, an exception exists where "the interests of the individual weigh heavily against requiring administrative exhaustion." See McCarthy v. Madigan, 503 U.S. 140, 146 (1992); see also Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019) ("Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute."). One such exception exists where "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action." McCarthy, 503 U.S. at 146-47 (1992).

Order at 3.

Similarly, the Seventh Circuit's analysis in *United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015), is instructive. In *Taylor*, the Court held that §3582(c)(2)'s statutory criteria create a 'non-jurisdictional case processing rule' that does not deny district courts subject-matter jurisdiction." *Id.* at 669-70. The Court explained "[t]hat description applies equally to any §3582(c)(2) motion." *Id.*

10

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

It follows that there is no reason to believe that subsection (c)(1) is jurisdictional, rather than a claim processing rule like (c)(2).

In fact, the *Taylor* decision made two observations that bear on this point. First, "§3582 is not part of a jurisdictional portion of the criminal code but part of the chapter dealing generally with sentences of imprisonment." *Id.* at 671. And second, the court emphasized that subsection (c) as a whole is not phrased in jurisdictional terms. *Id.* at 671.

That section begins: "The court may not modify a term of imprisonment once it has been imposed," with exceptions then specified. Since Congress has not framed the issue in terms of jurisdiction, the statutory indicators point against jurisdictional treatment. Thus, the Court's conclusion in *Taylor* that (c)(2) is not jurisdictional applies equally to (c)(1).

In accord, Judge Rakoff of the S.D.N.Y. recently noted that the law imposes not an exhaustion rule, but an option: the statute "requires the defendant to <u>either</u> exhaust administrative remedies <u>or</u> simply to wait 30 days." *Haney*, __ F. Supp. 3d __, 2020 WL 1821988, at *3 (S.D.N.Y. 2020) (emphasis in original).

Congress's decision to create a right-of-first refusal rule makes sense because BOP only triages compassionate release requests—there are no agency hearings, no administrative judges, no evidence and no record. Because Congress created only a 30-

11

day right-of-first refusal, it is submitted that the Court may excuse compliance under long-standing exceptions.

Indeed, numerous courts have already excused the 30-day lapse. *See, e.g.*, *U.S. v. Carver*, No. 19-cr-6044-SMJ (E.D. Wa. Apr. 8, 2020) (ECF No. 76 at 3:19) ("Defendant is excused from the administrative exhaustion requirement."); *U.S. v. Perez*, __ F. Supp. 3d __, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) (§ 3582 exhaustion excused); *U.S. v. Haney*, __F. Supp. 3d __, at *3 (S.D.N.Y. Apr. 13, 2020) (even though the "relevant exhaustion requirement is imposed by statute," Congress "cannot have intended the 30-day waiting period . . . to rigidly apply," and exhaustion is excused); *U.S. v. Zukerman*, 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020) (§ 3582 exhaustion waived); *U.S. v. Colvin*, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same); *U.S. v. Smith*, 2020 WL 1849748, at *4 (S.D.N.Y. Apr. 13, 2020) ("judicial waiver is permissible in light of the extraordinary threat certain inmates face from COVID-19"); *U.S. v. Bin Wen*, 2020 WL 1845104, at *4 (W.D.N.Y. Apr. 13, 2020) ("the law is well-established that even statutory exhaustion requirements—so long as not jurisdictional in nature—are subject to the doctrines of waiver and equitable estoppel" and granting release); *U.S. v. Powell*, No. 94-cr-316 (D.D.C. Mar. 28, 2020) (ECF No. 98) ("requiring defendant to first seek relief through the [BOP] administrative process would be futile").

In emergency contexts like the current one where compassionate treatment is sought, a fair reading of §3582

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

indicates that Congress intended the defendant to have a meaningful and prompt judicial determination. Waiting 30 days does not serve anyone's interests.

The Court is thus fully warranted in modifying Mr. Hendry's sentence to home confinement, while waiving the 30-day rule to expedite such sentence modification.

The relief sought is in line with Attorney General Barr's directive to the BOP to effectuate the immediate transfer of non-violent, first-offenders, who present no danger to society and are serving relatively short terms of imprisonment, to home confinement. (The parameters that match Gary Hendry's profile precisely.)

### Request for Recommendation to BOP, Pending Consideration of the Motion Herein

While this motion is under consideration, the Court is additionally urged to recommend to the BOP that Mr. Hendry, a worthy, be immediately transferred to home confinement for the balance of his sentence.

Courts frequently make post-sentence recommendations that the BOP consider RRC or home detention placement—those recommendations are one of the factors considered under 18 U.S.C. § 3621(b). *E.g., United States v. Buckley*, 2018 WL 6067437, at *1-2 (E.D. Cal. Nov. 20, 2018); *United States v. Turnquist*, 2018 WL 2460286, at *1-2 (E.D. Cal. May 31, 2018), *United States v. Collins*, 2018 WL 1157508, at *1-2 (E.D. Cal. Mar. 5, 2018); *United States v. Ellis*, 2017 WL 4641489, at *2-3 (N.D. Cal.

13

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

2017); *United States v. Miranda*, 2017 WL 3219941, at *2-3 (S.D. Cal. 2017) (home detention); *United States v. Bhamani*, 2017 WL 2992455, at *1-2 (E.D. Cal. 2017).

Several courts have made those recommendations during this COVID-19 global pandemic. *United States v. Fobbs*, CR 19-410 WHA, Docket No. 32 (N.D.Cal. Apr.7, 2020) ("For the reasons stated on the record and given defendant's heightened susceptibility to a severe coronavirus infection, the Court RECOMMENDS to BOP that defendant be placed in home confinement for the remainder of his custodial sentence."); *United States v. Powell*, No. 94-cr-316, ECF No. 95 (D.D.C. Mar. 24, 2020) ("Given the current COVID-19 global pandemic and the parties' joint request, the Court recommends that the Bureau of Prisons immediately place Samuel Powell into home confinement to serve the remainder of his prison term" under conditions).

Thus, in requesting that the Court make a recommendation to the BOP, defendant is following a trend that rapidly developing — emergency—events have inspired, as the following context shows:

On March 13, 2020, President Trump declared the COVID-19 outbreak in the United States a national emergency that had begun on March 1, 2020.

In light of the pandemic, and the likelihood that some inmates would be safer serving their sentences at home than in BOP facilities, on March 26, the Attorney General directed the BOP to prioritize the use of existing statutory authorities to transfer to home

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

confinement, those at-risk inmates who are non-violent and pose minimal likelihood of recidivism.

On March 27, 2020, Congress enacted the CARES Act. Section 12003(b)(2) of the CARES Act provides that, during this "covered emergency period" of the COVID-19 National Emergency, "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

On April 3, 2020, the Attorney General made the finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons. This finding "expanded the cohort of inmates who can be considered for home release." Because the Attorney General made this finding under the CARES Act, the BOP Director may now review *all* inmates for home confinement "—not only those who were previously eligible for a transfer.

The balance of Mr. Hendry's sentence, approximately 10 months, puts him squarely within the revised guidance on home confinements.

A judicial recommendation would hopefully get him to his home destination more expeditiously, and more safely. Mr. Hendry would self-quarantine at home where he poses no risk to the community.

15

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

Transferring Mr. Hendry to home confinement is not only important for his safety it is also important for the safety of the inmates and staff at FCC Jessup.

The Court is respectfully requested to recommend that Mr. Hendry be transferred to home confinement for the remainder of his sentence for the most cogent of all reasons—to dramatically increase the chances of his very survival.

As noted, hypertension alone, is an elevated coronavirus risk factor persuaded the District Court to release a hypertensive defendant under §3582(c)(1)(A) in *United States v. Sawicz, supra.*

The CDC has reported that, as of March 16, 2020, more than half of those hospitalized and nearly half of those admitted to an Intensive Care Unit were under the age of 65. The Intensive Care National Audit and Research Centre in London reports that 45.8% of those between the ages of 50-69 admitted to critical care died in critical care.

Data from China reflects that people over the age of fifty face a greater risk of serious illness or death from COVID-19. And, for unknown reasons, across the globe, COVID-19 kills more men than women.

In any case, the BOP's own staff reports that the agency is failing to respond to COVID-19 in its facilities.

The accounts are staggering: the New York Times "spoke[] with more than a dozen workers in the Bureau of Prisons," who reported that "federal prisons are ill-prepared for a sanitizer, and soap."

16

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

A BOP employee in Atlanta reported that staff does not have enough gloves, masks, or other supplies to respond to this outbreak, nor do they "have enough space to properly quarantine inmates."

Staff at FCI Tallahassee, a low-security facility, described a potential outbreak as "mass chaos," and confirmed that BOP is "just not prepared to handle something of that nature."

According to an email reviewed by The Marshall Project, after a senior correctional officer transported a sick prisoner (who on March 28, 2020, became BOP's first COVID-19-related fatality) from FCI Oakdale to a Community Hospital, the Bureau of Prisons' chief health officer in Washington ordered the correctional officer back to work unless and until he showed symptoms.[10] (Many more have perished as of April 20, 2020, a total of 18 inmates).

ABC news reports that FCI Jessup is a viral tinderbox waiting to happen. FCI Jessup Union President Pamela Millwood told ABC news that officers in the facility do not have access to hand sanitizer and were just given N95 protection masks this week.

In an email, Ms. Millwood told stated, "The institution is not concerned with our staff being exposed to COVID-19. When staff have reported exposure, the agency's doctor, Sylvia Cohen, has directed that as long as staff are not symptomatic they immediately return to work or use their own leave... All it will take is one diagnosis and we will be the new Oakdale."[11]

---

[10] Joseph Neff and Keri Blakinger, *Federal Prisons Agency "Put Staff in Harm's Way" of Coronavirus*, Marshall Project (April 3, 2020).

[11] Luke Barr, *Bureau of Prisons coronavirus response under fire: 'Reactive" not 'proactive' inmates, staff say*, ABC news, April 10, 2020. Abcnews.go.com

In light of the foregoing, granting this Motion and ordering Mr. Hendry to home confinement is legally and morally appropriate and clearly serves the interests of justice. The Court is urged to do so as expeditiously as possible.

Respectfully submitted

By_____
David Roth, Esq.
515 N. Flagler Drive, Suite 325
West Palm Beach, FL 33401
droth@rothduncan.com
(561) 655-5529

### Certification of Service

I hereby certify that the foregoing Motion and Incorporated Memorandum for Modification of Sentence and Other Relief was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

By_____
David Roth, Esq.