UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

United States of America  :  19-14035-CR-ROSENBERG

v.

Gary Hendry  :  April 27, 2020

## Defendant Gary Hendry's Reply Memorandum

This Reply addresses the Government's contention that the Court is powerless to modify defendant's sentence to home confinement because he has not exhausted administrative remedies.

Pre-pandemic, District Courts routinely denied prisoners' claims for failure to satisfy §3582(c)(1)'s exhaustion requirement, without having to decide whether this provision could be waived or excused in exceptional circumstances.

However, with COVID-19 raging through the penal system, District Judges nationwide are concluding that the First Step Act's exhaustion requirement is not jurisdictional and, as such, is

1

waivable/excusable.

Until just several weeks ago, Courts had no cause to consider whether §3582(c)(1)'s 30-day rule was a jurisdictional limitation on their authority to modify inceratory sentences for compassionate reasons or whether this rule was instead, excusable in exceptional circumstances.

Thus there was no compelling reason to delve into the jurisprudential nature of the First Step Act's 30-day delay provision.

However, the confluence of the dangers posed by the coronavirus pandemic to inmates confined in penal institutions and the sheer volume of cases in which defendants are seeking compassionate release to be protected from this virus, has compelled Courts to critically analyze §3582(c)(1).

As a result, a growing body of decisional law holds that Courts may indeed fashion appropriate relief notwithstanding an inmate's failure to wait-out §3582(c)(1)'s 30-day provision.

A number of District Courts, thus have reversed their earlier positions on §3582(c)(1)'s exhaustion provision. *See United States v. Scpata*, No. 1:18-cr-578, DKT No. 69 (S.D.N.Y. Apr. 19,

2020); *United States v. Carver*, Case No. 4:19-cr-6044-SMJ, DKT No. 76 (E.D.Wash. Apr. 8, 2020). In *Scpata*, Judges Alison Nathan explained,

> In a previous case, the Court determined that it lacked power to waive compliance with the compassionate-release provision's exhaustion requirement. *See United States v. Gross*, No. 15-cr-769 (AJN), 2020 WL 1862251 (S.D.N.Y. Apr. 14, 2020). Since reaching that conclusion, however, another Court in this District issued a decision that reached a contrary conclusion. *See United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020). This Court is persuaded by Judgess Liman's decision. As Justice Frankfurter warned: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." (internal citation omitted).

In less than 30 days, the Bureau of Prisons has gone from confirming its first COVID-19 cases, to now confirming 568 inmates and 342 staff have contracted the disease. BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Apr. 23, 2020) (counting those presently infected and those who have already recovered).

It has now infected at least 44 BOP facilities and 13 residential reentry centers that house federal inmates; 25 inmates and one staff

3

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

member have died. *Id.*[1]

This is despite the fact that the BOP has taken steps to attempt to control the spread.

All inmates have been generally locked down since March 31, 2020, and the BOP has mandated certain cleaning measures and issued protective gear, to the extent available. *See* Bureau of Prisons, *BOP Implementing Modified Operations.*

Despite these efforts the curve has not approached fattening for those inside the institutions' walls; inmates and staff alike.

Notably, some of the hardest hit institutions have been low and minimum security facilities that have dormitory-style bunks, with dozens of people in a single room.

This is the precise environment which Mr. Hendry will find himself in without the relief sought, when his 14-day isolation period expires. (May 1, 2020).

---

[1] These numbers likely represent an undercount because there is almost no testing being conducted at the most seriously affected sites. *See* Eric Heisig, *Judgess Grills Federal Prisons Lawyer On Lack of Coronavirus Tests*, Cleveland.com (Apr. 18, 2020) (stating that FCI Elkton, one of the hardest hit facilities, has tested 59 people out of its population of 2000 inmates, and receives only 25 tests per week); Tom McParland & Jane Wester, *NY Members of Congress Demand Aggressive and Immediate Covid-19 Testing* (Apr. 17, 2020) (reporting that only 19 inmates at MDC and MCC in New York City have been tested, out of population of 2,400, with 10 of those 19 testing positive).

4

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

The pandemic is without doubt straining the BOP's available resources. The current crisis has left a significant number of employees sick and a great number more quarantined. This clearly has stretched the agency's resources thinner than ever in history.

Co-located facilities that used to share staff for economies of scale can no longer do so. Counselors, teachers, and nurses are guarding prisoners. *See* Joseph Neff and Keri Blakinger, *Federal Prison Agency "Put Staff in Harm's Way" of Coronavirus*, The Marshall Project (Apr. 3, 2020).

Nurses are working around the clock. Correctional officers on shift wait to be relieved, but no relief comes. BOP officials have acknowledged these issues.

In a sworn declaration, the Associate Warden of FCI Oakdale, the facility with the highest death count, admitted that "[t]he number of sick and quarantined staff has caused a number of non-custody staff to have to work in traditional custody staff roles." *See* Declaration of Associate Warden Segovia, *Livas v. Myers*, 2:20-cv-422-TAD, Dkt. 8-1, at 3-4 (Apr. 10, 2020).

These staff shortages severely curtail the facilities' ability to respond to administrative requests. FCI Oakdale's Associate Warden's declaration lays this out starkly.

He was given a list of 58 people to screen for release on home confinement. In ordinary times, this review would be conducted by case-management specialists. However, the leader of the case-management team is out under quarantine, and other case-management staffs is performing custody functions.

Consequently, the institution had to assign "temporary staff" with some experience in case management to review home-confinement applications. *Id* at 5-6. These problems are endemic throughout the BOP.

In the BOP's most recent (pre-pandemic) annual report to Congress, it reported that the average time between receipt by the Warden and final decision was 39 days in cases of terminal illness, and 58 days in cases premised on a debilitating medical condition. *See* Appendix C, Bureau of Prisons Annual Report to Congress (Feb. 13, 2020). These are the median wait-times pre-pandemic.

6

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

Courts across the country therefore have confronted the crisis and have waived the 30-day exhaustion requirement, recognizing that the extraordinary health risks to vulnerable prisoners require immediate action. *See, e.g.*:

- *United States v. Minor*, 9:18-cr-80152-DMM (S.D.FL April 17, 2020)(copy provided) Judgess Middlebrooks waived the 30-day rule and reduced a 41-month sentence to time served because the defendant's medical conditions exposed him to a heightened risk of serious complications should he contract the coronavirus in custody;

- *Miller v. United States*, No. 16-20222-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) (permitting exceptions to the exhaustion requirement and holding: "Time is not on [defendant's] side. It is paramount to his safety to decide this issue promptly. Therefore, his request for release is properly before the Court.");

- *United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020) (noting that "even a few weeks' delay carries the risk of catastrophic health consequences" for vulnerable prisoners, and holding "exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in [the defendant's] unique circumstances—by the COVID-19 pandemic");

- *United States v. Perez*, No. 17 Cr 513-3 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020) (holding that the defendant's "undisputed fragile health, combined with the high risk of contracting COVID-19 in the [detention center], justifies waiver of the exhaustion

requirement");

- *United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020) (excusing compliance with exhaustion provision due to the COVID-19 outbreak and the defendant's risk of suffering severe complications);

- *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020), discussing the "catastrophic health consequences" that might result from delaying the motion for several weeks and the brief duration of the defendant's remaining custodial time.

These District Court decisions are but a sampling of the many rulings that find the 30-day rule to be a non-jurisdictional requirement, which may be excused/waived under the exceptional circumstances brought on by the COVID-19 pandemic.[2]

---

[2] *See United States v. Logan*, 1:12-cr-307, DKt. No. 179 (N.D.N.Y. Apr. 22, 2020) (applying equitable exception to 30-day rule); *U.S. v. Sanchez*, 2020 WL 1933815, at *5 (D. Conn. Apr. 22, 2020) ("In light of this Congressional purpose, the Court finds it has the discretion to waive the 30-day waiting period where strict enforcement would not serve the Congressional objective of allowing meaningful and prompt judicial review."); *U.S. v. Bess*, 2020 WL 1940809, at *6 (W.D.N.Y. Apr. 22, 2020) (finding "were this Court not to excuse [defendant's] failure to exhaust, the outcome easily could be fatal," and "it is hornbook law that limitations periods are 'customarily subject to equitable tolling'"); *U.S. v. Love*, No. 14-cr-4-PLM (W.D. Mich. Apr. 21, 2020) ("the Court finds that the administrative 30-day delay would unduly prejudice him); *Samy v. U.S.*, 2020 WL 1888842, at *2 (E.D. Mich. Apr. 16, 2020) (excusing exhaustion because "it would be futile" and "a delay would unduly prejudice" defendant); *U.S. v. Coles*, 2020 WL 1899562, at *5 (E.D. Mich. Apr. 17, 2020) (forcing defendant to file "his claim with the BOP first is futile. . . . the exhaustion requirement is waived and [the] request for compassionate release may be properly considered by the Court."); *U.S. v. Ben-Yhwh*, __ F. Supp. 3d. __, 2020 WL 1874125, at *4 (D. Haw. Apr. 13, 2020) ("requiring Ben-Yhwh to exhaust administrative remedies under the circumstances presented renders exhaustion of the BOP administrative process futile and inadequate, and unduly prejudicial"); *U.S. v. Carver*, No. 19-cr-6044-SMJ (E.D. Wa. Apr. 8, 2020) (ECF No. 76 at 3:19) ("Defendant is excused from the administrative exhaustion requirement."); *U.S. v. Perez*, __ F. Supp. 3d __, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) (§ 3582 exhaustion excused); *U.S. v. Haney*, __F. Supp. 3d __, at

Notably, many of these decisions rest Congressional intent. As one Court explained,

> No one anticipated today's circumstances, where each day that goes by threatens incarcerated defendants with greater peril. In essence, the 30- day rule was meant as an accelerant to judicial review. The Court is charged with interpreting Congressional intent and *it would pervert Congressional intent to treat it as a substantial obstacle to effective judicial review.*

*United States v. Smith*, No. 12 Cr 133 (JFK) at *4 (emphasis added; internal quotation marks omitted).

Judges Middlebrooks echoed these sentiments in *Minor*:

> Although §3582(c)(1)(A) plainly imposes an administrative exhaustion requirement, the United States Supreme Court has held that, even in such circumstances, an exception exists where "the interests of the individual weigh heavily against requiring administrative exhaustion." See McCarthy v. Madigan, 503 U.S. 140, 146 (1992);

---

*3 (S.D.N.Y. Apr. 13, 2020) (even though the "relevant exhaustion requirement is imposed by statute," Congress "cannot have intended the 30-day waiting period . . . to rigidly apply," and exhaustion is excused); *U.S. v. Zukerman*, 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020) (§ 3582 exhaustion waived); *U.S. v. Colvin*, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same); *U.S. v. Smith*, 2020 WL 1849748, at *4 (S.D.N.Y. Apr. 13, 2020) ("judicial waiver is permissible in light of the extraordinary threat certain inmates face from COVID-19"); *U.S. v. Bin Wen*, 2020 WL 1845104, at *4 (W.D.N.Y. Apr. 13, 2020) ("the law is well-established that even statutory exhaustion requirements—so long as not jurisdictional in nature—are subject to the doctrines of waiver and equitable estoppel" and granting release); *U.S. v. Powell*, No. 94-cr-316 (D.D.C. Mar. 28, 2020) (ECF No. 98) ("requiring defendant to first seek relief through the [BOP] administrative process would be futile"); *U.S. v. Gonzalez*, No. 18-cr-232-TOR, 2020 WL 1536155, at *1 (E.D. Wa. Mar. 31, 2020); *Thody v. Swain*, 2019 WL 7842560, at *2 (C.D. Cal. Nov. 26, 2019) (pre-coronavirus § 3582 case noting District Court may excuse failure to exhaust).

see also Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019) ("Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute."). One such exception exists where "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a Court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action." McCarthy, 503 U.S. at 146–47 (1992). Order at 3.

Similarly, the Court in *United States v. Jemal* questioned whether the BOP has sufficient resources to timely respond to such a massive emergency:

> [I]t is highly unlikely that, in drafting § 3582(c)(1)(A)(i), Congress anticipated a fast-moving pandemic of this magnitude that threatens large segments of the prison population and has resulted in an overwhelming tide of compassionate release requests that are straining, if not overwhelming, the BOP's resources, making it difficult to act with the speed that necessity commands.

No. 15 Cr 570 (JRP), 2020 WL 1701706, at *3 (E.D. Pa. Apr. 8, 2020).

And in *Haney*, Judge Rakoff pointed out that §3582(c)(1)(A)'s 30-day rule is not a traditional exhaustion requirement because it does not require the moving defendant to fully litigate his claim before the BOP before seeking judicial review.

The Court ruled, that such a provision can be waived "where, as here, strict enforcement of the 30-day waiting period would not serve Congressional objectives." 2020 WL 1821988, at 4.

The Court also noted that "in these exceptional times," the 30-day rule does not promote judicial efficiency because the Courts are being presented with the same or similar motions twice, and those Courts attempting to expedite matters by requesting speedy agency action, are being "effectively rebuffed." *Id.*

The Court further determined that "Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing Courts to deal with the emergency before it is potentially too late." *Id.*

The delay in this context can indeed be fatal. The case of Andre Williams underscores this point. Mr. Williams was a 78-year-old inmate at FCI Butner.

He was granted compassionate release by the United States Northern District Court of Florida on April 1, 2020.

11

The opinion was based in part on his age and poor health, which "put him at significant risk for even more severe and life threatening illness should he be exposed to COVID-19 while incarcerated." *See United States v. Williams*, No. 3:04-cr-00095-MCR-CJK, ECF 91 (N.D. Fl. Apr. 1, 2020). Tragically, Mr. Williams passed away prior to leaving prion doors.

According to the BOP's press release, Mr. Williams contracted COVID-19 in custody while the BOP was vetting his release plan and died. https://www.bop.gov/resources/news/pdfs/20200413_2_press_release_butner.pdf.

As numerous Courts have enunciated, the COVID-19 pandemic presents an extraordinary and historical threat to incarcerated individuals. *See, e.g., United States v. Stephens*, 2020 WL 1295155; *Gross*, 2020 WL 1673244 ("we are not currently living under normal circumstances"); accord *United States v. Nkanga*, No. 18-CR-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) ("The country faces unprecedented challenges from the novel Coronavirus pandemic. Those detained in jails and prisons face

particularly grave danger.").

In these exigent circumstances, the 30-day exhaustion period may be far too long—"each day, perhaps each hour, that elapses 'threatens incarcerated defendants with greater peril.'" *Gross*, 2020 WL 1673244, at *3 (quoting *United States v. Russo*, No. 16-cr-441 (LJL), Dkt. No. 54 at 5 (S.D.N.Y. Apr. 3, 2020)).

It is undisputed that Gary Hendry suffers from multiple serious medical issues that make him particularly especially vulnerable to complications from COVID-19. The authorities recited herein are especially relevant to his situation.

As this Court is aware, he suffers from hypertension; heart disease (mitral valve disorder); sleep apnea; diverticulitis, and high cholesterol.

Since Monday, May 20, 2020, Gary Hendry has been confined in a solitary environment, on a cot with no pillow, in complete isolation, deprived of a critical sanitizing device and with absolutely no adherence to his dietary requirements.

This is confluence of situational consequences is indeed a recipe for

13

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

potential personal disaster.

The Centers for Disease Control has identified hypertension alone (*emphasis added*), as a comorbidity that increases the likelihood of serious risk from COVID-19. *See* Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last updated April 13, 2020); *see also Basank v. Decker*, No. 20-cv-2518 (AT), 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020) (noting that hypertension increases risk of harm from COVID-19, taking "judicial notice that, for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality," and citing information from the CDC release); *United States v. Sawics*, No. 08- CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (concluding that, because the defendant suffered from hypertension, he was vulnerable to COVID-19 and thus "the risk of serious illness or death that he faces in prison constitutes an

14

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

extraordinary and compelling reason militating in favor of his release").

Yet, as the seconds slowly tick away Gary Hendry languishes in isolation on a cot with no pillow (critical for sleep apnea sufferers), deprived of its absolutely essential sanitizing device and on a prison diet which sadly ignores his medically necessary requirements. Gary Hendry's medical conditions without doubt are serious and potentially life-threatening and under the circumstances that exist are simply not nearly being adequately addressed.

Of note, the Government does not dispute his medical profile and agrees that hypertension alone elevates the risk of complications from the coronavirus. *See* Govt. Resp. at 18.

It is of little comfort that the virus has not yet infiltrated found its way into FCI Jessup. With staff coming in daily, it is only a matter of time, particularly in a dormitory environment, before the virus inevitably spreads.

By no means does Gary Hendry seek release from his sentence, (although he is no less eligible for release than the defendant in *Minor*

who was spared approximately 20 months of incarceration)or the many other defendants referenced herein who had their sentences effectively vacated.

Rather, his Motion is imploring to be able to serve his time in a medically safe environment, under the stringent conditions of home confinement.

When this motion was drafted on April 21, there were 785,245 confirmed COVID-19 cases and 42,448 deaths. Today, 6 days later, there are 972,481 confirmed cases and 54,944 deaths.

The spread of this virus is clearly not under control in the general population where the risks are not nearly as high as those confronting Gary Hendry (in a crowed dormitory environment).

Last week, John Ng died at FCI Milan. He was the 25th inmate to die in federal custody since March 29, 2020. He was 43 years old, serving a 14-month sentence at a low-security facility. He tested positive for Covid-19 on the 11th of April and died less than 2 weeks later.[3]

---

[3] *See* www.bop.gov/resources/news/pdfs/20200424_press_release_release_mil.pdf

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

As a growing body of case law reveals: §3582(c)(1) does not disempower District Courts from deciding motions for compassionate release, without having to wait the imprisoned 30 days from the commencement of incarceration.

It is respectfully and urgently submitted that this Court has the authority to modify the Gary Hendry's sentence to home confinement, under the extraordinary and compelling personal circumstances, wrought by the coronavirus pandemic.

This in indeed articulated by BOP eligibility perspective in defendant's main and reply memoranda and completely consistent with he previously cited memorandum from the Attorney General of the United States. Gary Hendry prays that this Honorable Court so exercises its authority.

Respectfully submitted,

By *David Roth*
David Roth, Esq.
515 N. Flagler Drive, Suite 325
West Palm Beach, FL 33401
droth@rothduncan.com
(561) 655-5529

## Certification of Service

I hereby certify that the foregoing Reply Memorandum was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

By _/s/ David Roth_
David Roth, Esq.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818