UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   19-14035-CR-ROSENBERG/MAYNARD

UNITED STATES OF AMERICA

v.

GARY HENDRY,

                **Defendant.**
_____/

## RESPONSE IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and hereby submits its Response in Opposition to the Emergency Motion for Compassionate Release filed by the defendant, Gary Hendry ("Hendry"), in the above-captioned case. The United States respectfully submits a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) is inconsistent with the factors set forth in 18 U.S.C. § 3553(a).

## BACKGROUND

On July 11, 2019, a federal grand jury in the Southern District of Florida returned an indictment charging TentLogix, Inc. ("TentLogix"), Hendry, Dennis Birdsall ("Birdsall"), and Kent Hughes ("Hughes") with conspiring to harbor aliens for the purpose of commercial advantage or private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count One), and Hendry and Birdsall with causing false statements to be made in a matter within the jurisdiction of the executive branch of the United States in violation of 18 U.S.C. § 1001(a)(2) (Count Two). (Doc. No. 1.) Shortly thereafter, Hendry was arraigned and released on a $250,000 personal surety bond. (Doc. Nos. 19, 22.)

On September 25, 2019, Hendry pleaded guilty to the conspiracy charge pursuant to a written plea agreement with the United States. (Doc. Nos. 82-87, 96.) Hendry also agreed to forfeit $282,789.00 to the United States, which represents the amount of gross proceeds Hendry personally obtained as a result of his participation in the conspiracy. (Doc. No. 83.)

The Presentence Investigation Report ("PSI") established an advisory sentencing guideline range of 37 – 46 months based on a total offense level of 21 and criminal history category of I, which included a six-level enhancement under USSG § 2L1.1(b)(2)(B) because the offense involved the harboring of at least 25 but less than 100 aliens, a four-level enhancement under USSG § 3B1.1(a) for being an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive, and a two-level enhancement under USSG § 3C1.1 for obstruction of justice. (PSI at ¶¶ 34-43, 96.)

The United States filed a motion pursuant to USSG § 5K1.1 requesting the Court to depart downward from the bottom of Hendry's advisory guideline range by 20 percent to reflect the substantial assistance he provided to the United States, which the Court granted. (Doc. No. 153; Sentencing Transcript at pgs. 5-8.)

On December 20, 2019, the Court sentenced Hendry to a term of imprisonment of one year and one day, to be followed by 3 years of supervised release, which represented a downward variance from his advisory guideline range. (Doc. Nos. 173, 177.) The Court also imposed a $75,000 fine against Hendry. (Doc. No. 177.) Without objection from the United States, the Court permitted Hendry to remain on bond and ordered him to self-report to the Federal Bureau of Prisons ("BOP") on or before April 20, 2020. (*Id.*)

On April 20, 2020, Hendry reported to FCI Jesup in Jesup, Georgia, to begin service of his sentence. At that time, Hendry also submitted a request to the warden at FCI Jesup for "expedited

home confinement," which BOP now has expanded authority to grant under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). In short, the CARES Act, coupled with the Attorney General's Memorandum to BOP dated April 3, 2020,[1] gives BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic. *Id*. at § 12003(b)(2).[2] Hendry's request for expedited home confinement was denied on April 30, 2020, primarily because at the time he submitted his request he had yet to serve 25% of his sentence.

On April 21, 2020, Hendry filed a Motion for Modification of Sentence, in which he requested the Court to modify his sentence to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 182.) Hendry argued that his medical conditions – hypertension, mitral valve disorder, melanoma, diverticulitis, high cholesterol, and sleep apnea – would place him in a higher risk category were he to contract COVID-19. (*Id*.)

On May 5, 2020, the Court denied Hendry's request for a sentence reduction. *United States v. Hendry*, 2020 WL 2129246 (S.D. Fla. May 5, 2020). The Court determined Hendry had failed to demonstrate "extraordinary and compelling reasons that warrant the conversion of his

---

[1] https://www.justice.gov/file/1266661/download (July 9, 2020).

[2] Prior to the CARES Act, BOP was statutorily authorized to transfer certain inmates to home confinement during the last six months or 10% of a sentence. *See* 18 U.S.C. § 3624(c)(2). Pursuant to the guidelines promulgated by the Attorney General, BOP instituted its own review in response to the COVID-19 pandemic. It prioritized certain cases for transfer to home confinement, based on inmate characteristics, the inmate's disciplinary record, medical risk, danger to the community, and other factors. Priority was given to three institutions, FCI Oakdale, Danbury, and Elkton, where the risk and need were most acute. Under the CARES Act, BOP was authorized to, and did, extend the maximum amount of time for which home confinement could be substituted for imprisonment. *BOP is currently prioritizing inmates who have served 50% of their sentences or have served 25% and have less than 18 months remaining*.

sentence to home confinement." *Id*. at 2.  The Court also considered the Section 3553(a) factors and concluded "a sentence modification is not warranted in light of th[ose] factors." *Id*.

On July 6, 2020, Hendry filed a Renewed Motion for Modification of Sentence, in which he again requested the Court to modify his sentence to home confinement pursuant to Section 3582(c)(1)(A)(i).  (Doc. No. 195.)  In support of his second request for a sentence reduction, Hendry noted that there were several confirmed active cases of COVID-19 at FCI Jesup.  Shortly after Hendry filed his second request for a sentence reduction, BOP designated Hendry for home confinement under Section 3624(c)(2), with a transfer to home confinement date of July 28, 2020.  Hendry will be required to quarantine for 14 days at FCI Jesup prior to his release and obtain medical clearance[3] to minimize the possibility of any spread of COVID-19 to the public.

On July 13, 2020, the Court denied Hendry's renewed request for a sentence reduction. (Doc. No. 205.)  Specifically, the Court reasoned as follows:

> Hendry asks the Court to release him from prison in light of the COVID-19 pandemic.  The Government has filed a Notice [201] that the Bureau of Prisons has designated Hendry to serve the remainder of his sentence in home confinement, with a transfer date of July 28, 2020.  Hendry has acknowledged that he would be quarantined for 14 days even if the Court were to grant his release from prison [197].  Thus, a grant of his Motion for Court-ordered release would not result in his release from prison before the date for his transfer under the Bureau of Prisons' plan.  The Bureau of Prisons possesses greater knowledge than the Court about the conditions within its prisons, its response to the pandemic, and the adequacy and feasibility of plans for alternative confinement.  Therefore, the Court denies Hendry's Motion for Court-ordered release to permit the Bureau of Prisons plan for his transfer to home confinement to go forward.  Hendry may renew his Motion should he discover that he will not be transferred to home confinement on July 28.

*Id*.

---

[3] Per BOP policy, Hendry must test negative for COVID-19 before he can be released from FCI Jesup.

On July 14, 2020, the United States learned that Hendry tested positive for COVID-19.[4] On the same date, Hendry filed the instant motion, in which he again requests the Court to grant his "immediate compassionate release" pursuant to Section 3582(c)(1)(A)(i).  (Doc. No. 206.) As of the date of this filing, 113 inmates and 7 staff members have tested positive for COVID-19 at FCI Jesup.[5]

## ANALYSIS

A federal district court generally may not modify or revisit a sentence of imprisonment once it has been imposed.  Indeed, "[t]he authority of a district court to modify an imprisonment sentence is narrowly limited by statute."  *United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010) (emphasis added).  "The law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule."  *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (internal marks and citation omitted).  "No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved."  *Mackey v. United States*, 401 U.S. 667, 691 (1971) (Harlan, J., concurring in part and dissenting in part).

A district court has the authority to consider a request to modify or reduce a defendant's sentence in the following limited circumstances: (1) a petition for compassionate release under Section 3582(c)(1)(A); (2) if the modification is expressly permitted by statute or Federal Rule of

---

[4] The United States recognizes the serious health risks presented by COVID-19, and is sensitive to the challenges COVID-19 poses to incarcerated persons, especially those who contract COVID-19 while in BOP custody.  The United States does not seek to diminish or minimize those concerns by opposing Hendry's request for compassionate release.

[5] https://www.bop.gov/coronavirus/ (July 15, 2020).

Criminal Procedure 35; (3) a remand following an appeal pursuant to 18 U.S.C. § 3742; or (4) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. *See* 18 U.S.C. § 3582(b-c); cf. 28 U.S.C. § 2255 (permitting defendants to request the court which imposed the sentence to vacate, set aside or correct the sentence under limited circumstances).

Hendry is proceeding under Section 3582(c)(1)(A)(i) which provides, in relevant part, as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>
>>> (i) *extraordinary and compelling reasons warrant such a reduction*;
>>>
>>> . . . .
>>>
>>> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*[.]

(emphases added).[6]

---

[6] Section 3582(c)(1)(A) was amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Prior to the First Step Act, only BOP, rather than defendants themselves, could bring a motion for compassionate release under Section 3582(c)(1)(A).

In order to modify a sentence and grant compassionate release under Section 3582(c)(1)(A)(i), a district court must engage in a three-step process. First, the Court must find that the defendant has fully exhausted all administrative rights to appeal any failure by BOP to bring such a motion on his behalf or that 30 days have expired from the receipt of such a request by the warden of the facility where the defendant is incarcerated.[7]  18 U.S.C. § 3582(c)(1)(A). Second, the Court must consider the Section 3553(a) factors.  18 U.S.C. § 3582(c)(1)(A)(i). Third, the Court must find that extraordinary and compelling reasons warrant such a reduction.[8] *Id.*; *see also United States v. Stuyvesant*, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020); *United States v. Bueno-Sierra*, 2020 WL 2526501, at *3 (S.D. Fla. May 17, 2020).[9]

The burden is on Hendry to satisfy each of these thresholds, and it is a heavy burden that he bears.  *See, e.g.*, *United States v. Hylander*, 2020 WL 1915950, at *2 (S.D. Fla. Apr. 20, 2020).

The United States respectfully submits that granting Hendry compassionate release under Section 3582(c)(1)(A)(i) at this juncture is inconsistent with the Section 3553(a) factors. The United States defers to the arguments contained in its responses to Hendry's prior motions for compassionate release with respect to the Section 3553(a) factors.  *See* (Doc. Nos. 187, 200.) *The United States notes that BOP has already designated Hendry for home confinement under Section 3624(c)(2).*  Hendry will be transferred to home confinement as soon as he completes a

---

[7] The United States does not contend Hendry has failed to exhaust his administrative remedies.

[8] Under the present circumstances, the United States concedes that an inmate with Hendry's underlying health conditions who contracts COVID-19 while in BOP custody satisfies the extraordinary and compelling reason standard contained in 3582(c)(1)(A)(i).

[9] In some cases, the Court must also consider whether the defendant poses a danger to the safety of any other person or the community. Provided Hendry tests negative for COVID-19 before he is released from FCI Jesup, the United States does not contend Hendry presents a danger to the safety of any other person or the community.

14-day quarantine and tests negative for COVID-19. In sum, if the Court denies Hendry's request for compassionate release, BOP will be responsible for supervising Hendry while he serves the remainder of his sentence on home confinement. If the Court grants Hendry's for request for compassionate release, the United States Probation Office will be responsible for supervising Hendry for the duration of any modified sentence and/or supervised release imposed by the Court. The United States has no quarrel with and supports BOP's decision to designate Hendry for home confinement under Section 3624(c)(2). Hendry, however, should be required to serve the remainder of his sentence on home confinement under BOP supervision.

## CONCLUSION

For the above stated reasons, the United States respectfully submits Hendry's Emergency Motion for Compassionate Release is due to be denied.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: **/s/Michael D. Porter**
Michael D. Porter
Assistant United States Attorney
Florida Bar# 0031149
101 South U.S. Highway 1
Suite 3100
Fort Pierce, Florida 34950
Telephone: (772) 293-0950
Email:michael.porter2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.   All other parties will be served by either regular U.S. mail or inter-office delivery.

**/s/Michael D. Porter**
Michael D. Porter
Assistant United States Attorney
